J-A01011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.J.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.J.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 890 MDA 2021 |

Appeal from the Decree Entered June 21, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  1693 of 2020

| | | |
|---|---|---|
| IN RE: D.D.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.J.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 891 MDA 2021 |

Appeal from the Decree Entered June 21, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  1694 of 2020

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:　　　　　　　**FILED: FEBRUARY 9, 2022**

Appellant K.J.S. (Mother) appeals from the decree[1] granting the petition

of  Lancaster  County  Children  and  Youth  Services  (the  Agency)  and

---

[1] The orphans' court issued a single decree listing both docket numbers. **See**
Decree, 6/11/21.

involuntarily terminating her parental rights to D.J.G. and D.D.G. (collectively, the Children).[2] We affirm.

The orphans' court set forth the following findings of fact:

- D.J.G. was born [in] April [of] 2018. D.D.G. was born [in] February [of] 2015.

- The parents of the Children are [Mother] and [De.D.G. (Father)].

- The Children came into the Agency's care on March 21, 2019.

- The concerns that caused the Children to be placed by the Agency were lack of supervision by Mother, drug use by Mother, and unstable housing.

- At the time of the adjudicatory hearing which entailed placement of the Children at that time, they were in the custody of Mother[,] and Father was incarcerated.

- Mother appeared as an unrepresented party at the disposition hearing held on April 25, 2019, as she failed to apply for court-appointed counsel and agreed to represent herself.

- At the disposition hearing, each parent was granted a child's permanency plan with a primary permanency goal of reunification and a concurrent permanency goal of adoption.

- The goals on the child's permanency plan for Mother were: (a) to remain free from drugs and misuse of alcohol; (b) to remain crime-free; (c) to learn and use good parenting skills; (d) to be financially stable in order to provide for herself and her child[ren]; (e) to obtain and maintain a home free and clear of hazards for herself and her child[ren]; and, (f) to maintain an ongoing commitment to her child[ren].

- On March 8, 2019, Mother tested positive for opiates, methamphetamine, and amphetamines, which was prior to the placement of the Children at the time of the adjudicatory hearing.

---

[2] This Court *sua sponte* consolidated Mother's appeals on July 19, 2021.

- The Agency made a referral [for Mother go to] to Family Alternatives for two drug and alcohol evaluation[s] but Mother failed to attend both appointments.

- Subsequently, the Agency referred Mother to the Naaman Center for a drug and alcohol evaluation and again Mother failed to attend [those] appointments. This would have transpired after the disposition hearing held on April 25, 2019.

- Mother testified that she had a drug and alcohol evaluation by telephone during [the] COVID[-19 pandemic] but did not know the date and did not provide a name for the evaluator.

- Mother did not receive a report from the evaluator[.]

- Mother attended White Deer Run Rehabilitation for 27 days sometime in October of 2019[.]

- Mother was unsuccessfully discharged from White Deer Run because she was in a relationship with a patient. Mother stated the patient was her boyfriend.

- Subsequently, Mother was transferred to the Lebanon White Deer Run for completion of the program.

- Mother was only at the Lebanon White Deer Run for one day. Mother left because she did not like it there, so she failed to complete the program.

- Mother did not enroll in another drug and alcohol rehabilitation center.

- The caseworker reported [at the September 20, 2019 permanency review hearing] that Mother continues to use methamphetamine at least once a week.

- At the review hearing held on August 26, 2020, the caseworker stated that she had spoken to Mother just one time. During the conversation, Mother told the caseworker that she was homeless. [Mother's sole question to the Agency caseworker was to ascertain whether] her parental rights had been terminated.

- As of the time of the September 20, 2019, permanency review hearing, Mother had pending drug possession charges, was not employed, and was homeless.

- [The Agency filed a petition for involuntary termination of Mother and Father's[3] parental rights on September 3, 2020.] At the time of the termination of parental rights hearing on April 22, 2021, Mother was in the Lancaster County Prison and she was not in compliance with the goal to remain crime-free.

- In the course of these cases, Mother never provided any proof to the Agency that she was employed or that she had stable housing.

- Mother failed to contact the Agency for a period exceeding six months which resulted in [the dependency court making] a finding of aggravated circumstances[4] against Mother on February 12, 2020. Mother's visitation with the Children was suspended at that time and thereafter no further services were offered to Mother by the Agency.

- Mother did not attend the permanency review hearing held on August 26, 2020.

- Mother failed to appear for the permanency review hearing held on September 20, 2019.

- Mother did not visit with the Children after August 7, 2019.

- Mother never sent any cards or letters to the Children.

- Mother testified that she did not visit the Children in 2019 because she did not have bus passes.

- Mother also testified that she believed her visits with the Children had been canceled because the resource mother told her so. However, the resource mother did not tell Mother that her visits were canceled, but rather that Mother needed to make arrangements with the Agency caseworker for visits.

- Mother sent a text message to the resource mother on January 24, 2019. In her text message, Mother told the resource

_____

[3] Father was served with notice of the April 22, 2021 termination hearing, but failed to appear. N.T. Termination Hr'g, 4/22/21, at 4-5. The orphans' court also involuntarily terminated Father's parental rights to Children. *See* Decree, 6/11/21. However, Father did not file an appeal.

[4] *See* 42 Pa.C.S. §§ 6302, 6351(f)(9).

- 4 -

mother that she misses the Children and loves them but Mother did not ask to speak to them.

- Mother would call the resource mother and ask for money for a hotel room and for food.

- Mother claimed that D.D.G. repeatedly told the Children's maternal grandmother that he wants to come live with Mother. However, the resource mother supervised all of the . . . maternal grandmother's visits with the Children and D.D.G. never made the statements as Mother claimed but in fact D.D.G. stated that he wished to remain with the resource mother forever.

- The Children are placed together in a kinship home and the resource parents wish to adopt them.

- The Guardian *ad litem*[5] supports termination of the parental rights.

- The Children have bonded with the [resource] parents.

Orphans' Ct. Op., 9/28/21, at 6-11 (citations omitted and formatting altered).

The orphans' court held a hearing on the petition to involuntarily terminate Mother's parental rights on April 22, 2021. Mother participated in the hearing via the video conferencing application Lifesize. At the hearing, the orphans' court heard testimony from Robert Pratt, an Agency supervisor; Tiffany Smith, an Agency caseworker; Mother; and the resource mother.

---

[5] Gina Carnes, Esq. served as GAL and represented both Children's legal interests and best interests at the termination hearing. During the hearing, the GAL stated that there was no conflict in those interests, and the orphans' court found that there was no conflict. N.T. Termination Hr'g at 36-37; **see also In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020) (stating that where a GAL was appointed to represent both the child's legal and best interests, appellate courts may review *sua sponte* "whether the orphans' court determined that the child[ren]'s best interests and legal interests did not conflict").

On June 11, 2021, the orphans' court issued a decree involuntarily terminating Mother's parental rights to the Children pursuant to Section 2511(a)(1), (2), and (b).

Mother timely filed notices of appeal and statements of errors complained on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed a responsive opinion.

Mother raises the following issues for our review:

1. The Agency failed to prove by clear and convincing evidence under 23 Pa.C.S. [] 2511(a)(1) that Mother evidenced a settled purpose of relinquishing her parental claim to her children or has refused or failed to perform her parental duties for a period of six (6) months immediately preceding the filing of the petition when Mother at all times desired to exercise her parental claim to her children and was never provided the opportunity to perform her parental duties; the [orphans'] court also erred in determining it would be in the children's best interest to terminate Mother's parental rights.

2. The Agency failed to prove by clear and convincing evidence under 23 Pa.C.S. [] 2511(a)(2) that Mother's repeated and continued incapacity has caused her children to be without essential parental care, control or subsistence necessary for her children's physical and mental well-being when Mother was never provided the opportunity to show the Agency that she did not have an incapacity and that she could provide essential parental care, control and subsistence necessary for the children's physical and mental well-being.

Mother's Brief at 5-6 (formatting altered).

Our Supreme Court has explained that

appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if

- 6 -

they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

[T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

The burden is on the petitioner "to prove by clear and convincing evidence that [the] asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

This Court has explained:

Termination of parental rights is governed by section 2511 of the Adoption Act, [23 Pa.C.S. § 2511,] which requires a bifurcated analysis:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*   *   *

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a).

*In re M.T.*, 101 A.3d 1163, 1178-79 (Pa. Super. 2014) (*en banc*) (citations omitted and formatting altered).

### Section 2511(a)(2)

We first address Mother's challenge to the evidence supporting termination under Section 2511(a)(2). Mother's Brief at 12-14. Mother contends that she does not have a repeated incapacity, and alternatively claims that if she did, that incapacity did not cause the Children to be without proper parental control. *Id.* at 13. Mother asserts that she is attempting to remedy any incapacity she may have by attending rehab. *Id.* Mother noted that she attended White Deer Run Rehabilitation for twenty-seven days out of a thirty-day program. *Id.* at 14.

Mother also claims that she stopped attending visitation with the Children because the resource mother told her that visitation had been cancelled. *Id.* at 13-14. Mother explained that she will be looking for work after she is released from prison and will be staying with her father (*i.e.*, the Children's maternal grandfather). *Id.* at 13. Mother notes that she is free from illegal substances, will stay on maintenance, and that maternal grandfather can assist her with child care. *Id.*

The Agency responds that Mother engaged in "pervasive and persistent substance abuse[,] which resulted in her inability to provide safe housing, income, food and clothing for herself and her children." Agency's Brief at 13 (formatting altered). The Agency also argues that Mother's failure to remain in contact with the Agency and her children was proof that Mother had no intention to remedy the cause of her incapacity. *Id.* The GAL/Children's legal counsel did not file a brief.

Section 2511(a)(2) states:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*    \*    \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

- 9 -

To satisfy the requirements of [Section] 2511(a)(2), the moving party must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.

*In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citations and quotation marks omitted).

Further, this Court has explained:

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct.

Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Thus, while sincere efforts to perform parental duties, can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under subsection (a)(2). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous.

*In re Z.P.*, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (citations omitted and formatting altered).

Further, this Court has stressed that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities." *Interest of D.R.-W.*, 227 A.3d 905, 914 (Pa. Super. 2020) (citation omitted and formatting altered).

Here, the orphans' court addressed Section 2511(a)(2) as follows:

> Mother's total lack of contact with the Agency and the Children (which led to the finding of aggravated circumstances against Mother) is indisputable proof that Mother had no intention of attempting to remedy the cause of her incapacity to parent. Her incapacity has caused the children to be without essential parental care and Mother has no intention of attempting to provide parental care.
>
> As discussed above, Mother's pervasive and persistent substance abuse renders her incapable of parenting the Children. During the course of this case, Mother never obtained housing which was safe and secure for herself, let alone for the Children. Mother was unable to obtain a consistent income to provide food and clothing for herself and the Children. For nearly a full year after the Children were placed, Mother failed to take advantage of the services offered by the Agency to assist her in overcoming her parenting deficits. Mother is unable to provide the Children a nourishing environment for them to flourish and become productive members of society. The Agency proved grounds for the termination of Mother's parental rights pursuant to 23 Pa.C.S.[] § 2511 (a)(2) by clear and convincing evidence.

Orphans' Ct. Op. at 16-17.

Following our review, we find no abuse of discretion or error of law in the orphans' court's conclusion that the Agency presented clear and convincing evidence to support termination of Mother's parental rights under

Section 2511(a)(2). ***See S.P.***, 47 A.3d at 826-27; ***see also R.N.J.***, 985 A.2d at 276.

The record reflects that after Child was placed in kinship care in March of 2019, Mother's permanency plan goals were as follows: (1) to remain free from drugs and misuse of alcohol; (2) to remain crime-free; (3) to learn and use good parenting skills; (4) to be financially stable in order to provide for herself and her children; (5) to obtain and maintain a home free and clear of hazards for herself and her children; and, (6) to maintain an ongoing commitment to her children. ***See*** N.T. Termination Hr'g at 9.

With respect to drugs and alcohol, permanency supervisor Robert Platt testified that Mother failed to attend several drug and alcohol evaluations that the Agency had scheduled for her. ***See id.*** at 9-10. Although Mother testified that she had obtained a drug and alcohol evaluation over the phone after the start of the COVID-19 pandemic, she never obtained a copy of the written evaluation report. ***See id.*** at 26-27. Mother testified she completed twenty-seven days of a thirty-day drug rehabilitation program, but she left before completing the program, after she was transferred to another facility and she "did not like it here." ***See id.*** at 30-31. The orphans' court credited Mr. Platt's testimony that Mother had not addressed her drug and alcohol problem. ***See id.*** at 10.

Further, Mr. Platt testified that Mother had been arrested for drug charges in 2019, and therefore, she had not met her goal to remain crime free. ***See id.*** at 11. Additionally, Mother testified she that she pleaded guilty

to providing false identification to law enforcement in February of 2021. *See id.* at 35.

Regarding the goal of financial stability, Mr. Platt explained that while the Agency was supervising Mother's case, Mother did not work with Family Alternatives to obtain employment or assistance with transportation to look for jobs. *See id.* at 11-12. Further, Mother did not provide the Agency with proof of employment. *See id.* at 12. As for Mother's goal to obtain housing, Mother never provided the Agency with a lease for a residence. *See id.*

Regarding visitation, Mr. Platt testified that Mother's last visit with the Children occurred on August 7, 2019. *See id.* Additionally, resource mother testified that Mother participated in visitation with the Children through the Agency for about one month. *See id.* at 41. Afterwards, Mother failed to appear for visitation with the Children and the Agency stopped Mother's in-person visitation, but there was some phone contact between Mother and the Children. *See id.* The dependency court eventually suspended Mother's visitation. *See id.* at 20.

Mother claimed that in 2019, prior to the dependency court suspending her visitation, resource mother told Mother that further visitation with the Children was not permitted. *See id.* at 27-29. The orphans' court credited resource mother's testimony that she never denied Mother visitation, but rather informed Mother to contact Agency caseworkers to arrange visitation. *See id.* at 41.

Under these circumstances, the record supports the orphans' court's conclusion that Mother's continued incapacity has caused the Children to be without essential parental care and that the causes of that incapacity cannot or will not be remedied. **See C.M.K.**, 203 A.3d at 262; **Z.P.**, 994 A.2d at 1117-18. Although we recognize that Mother attempted to complete at least some of her child's permanency plan goals, her efforts were insufficient to preserve her parental rights under Section 2511(a)(2). **See Z.P.**, 994 A.2d at 1117 (stating that a parent's "efforts may be insufficient to remedy parental incapacity under [Section 2511(a)(2)]" (citation omitted)); **see also E.A.P.**, 944 A.2d at 82 (explaining that "the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties," particularly when "disruption of the family has already occurred and there is no reasonable prospect for reuniting it" (formatting altered)).

Therefore, we discern no abuse of discretion by the orphans' court in determining that Mother's conduct warrants termination under Section 2511(a)(2). **See S.P.**, 47 A.3d at 826-27; **see also R.N.J.**, 985 A.2d at 276. Accordingly, Mother is not entitled to relief. **See M.T.**, 101 A.3d at 1179 (stating that we may affirm a termination order based on any subsection of Section 2511(a)).

### Section 2511(b)

Mother also argues that the orphans' court erred by terminating Mother's parental rights because no evidence was presented on how the

termination would affect the Children.[6]   Mother's Brief at 15-16.   Mother contends that she loves her Children and is bonded with them.   She acknowledges the bond between the Children and the resource family, but the Agency did not conduct a bonding assessment.  *Id.* at 15.   Mother argues there was insufficient evidence in the record for the orphans' court to "discern the effect on the children of permanently severing the parental bond with Mother." *Id.* at 15-16 (citation omitted).

The Agency responds that the orphans' court correctly concluded that because of the Children's young age at the time of kinship placement, there was no bond to break, and termination was in the best interest of the Children so they could be adopted by the resource parents.  Agency's Brief at 13-14.

Section 2511(b) provides:

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . .

23 Pa.C.S. § 2511(b).

---

[6] Mother did not include this issue in her statement of questions involved. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). However, because this claim is encompassed in Mother's overall challenge to the termination proceedings, we decline to find waiver. *See In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (addressing the trial court's analysis of Section 2511(b) despite the mother's failure to present a challenge under that subsection).

"[T]he focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child." *C.L.G.*, 956 A.2d at 1008 (citation omitted).

The *C.L.G.* Court explained that regarding Section 2511(b):

Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond.

Moreover, [t]he court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. Most importantly, adequate consideration must be given to the needs and welfare of the child.

*Id.* at 1009-10 (citations omitted and formatting altered).

"In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Further, the existence of "some bond" between a parent and a child "does not necessarily defeat termination of her parental rights." *Id.* at 764. Rather, the question is whether the bond between the parent and the child "is the one worth saving or whether it could be sacrificed without irreparable harm to" the child. *Id.*

Further, "[w]hen conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer

- 16 -

evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***Z.P.***, 994 A.2d at 1121 (citations omitted).

Here, the orphans' court explained:

> The Guardian *ad litem* adamantly advocated for the Children. She maintained that the Children are flourishing in their kinship home, which is a permanent resource for the Children. The Children have little to recall about their Mother. If there is no bond to break, there will be no damage inflicted upon the Children. Termination of the parental rights is in the best interest of the Children.

Orphans' Ct. Op. at 18.

Based on our review of the record, we discern no basis to disturb the orphans' court's finding that termination of Mother's parental rights would best serve the Children's needs and welfare. ***See C.L.G.***, 956 A.2d at 1009-10.

At the termination hearing, resource mother stated that D.D.G., the older child, often refused to speak to Mother on the phone when she called. ***See*** N.T. Termination Hr'g at 41. Resource mother also testified that D.D.G. told her and her partner "all the time" how much he loves them, and that D.D.G. has stated that he loves resource mother more than Mother. ***See id.*** at 42. About six months after the Children started living with resource parents, D.D.G. stopped talking about his birth parents. ***See id.*** at 43-44. Further, D.D.G. now refers to his birth parents by their first names and refers to resource parents as "Mom" and "Dad." ***See id.*** at 44.

Additionally, the GAL stated that the Children are "very settled in with this family, they're bonded [with resource parents] and it is a kinship resource and the older child is six and he does want to remain." ***See id.*** at 37. D.D.G.

told the GAL that he wants to stay where he is forever. ***See id.*** at 38. The GAL explained that because the D.J.G. is four years old, she did not raise the topic of his preferences with him. ***See id.*** at 37.

Based on the foregoing, we conclude that the record supports the orphans' court's finding that there was no bond between the Children and Mother. ***See K.Z.S.***, 946 A.2d at 762-64. Likewise, the record supports the orphans' court's finding that the Children are flourishing in the care of the resource parents and that the termination of Mother's parental rights served the best interests of the Children. ***See C.L.G.***, 956 A.2d at 1009-10.

Therefore, we discern no abuse of discretion by the trial court in applying Section 2511(b). ***See S.P.***, 47 A.3d at 826-27. For these reasons we affirm the orphans' court's decree as to Sections 2511(a) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/09/2022

- 18 -